!IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| FEDERATED MUTUAL INSURANCE COMPANY, a Minnesota corporation, and <br><br> Plaintiffs, <br><br> v. <br><br> P1 GROUP, INC., a Kansas corporation, RUDOLPH/LIBBE, INC., an Ohio corporation, GEM INDUSTRIAL, INC. D/B/A GEM INC., an Ohio corporation, CLARIOS, LLC F/K/A JOHNSON CONTROLS BATTERY GROUP, LLC, a Wisconsin corporation, SIR RALEIGH ELECTRIC, Inc., a North Carolina corporation, and NATHANIAL NORMAN, <br><br> Defendants. | Civil Action No. 1:23-cv-989 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, FEDERATED MUTUAL INSURANCE COMPANY ("Federated") for its Complaint for Declaratory Relief against Defendants, P1 GROUP, INC. ("P1"), RUDOLPH/LIBBE, INC. ("Rudolph"), GEM INDUSTRIAL, INC. D/B/A GEM INC. ("GEM"), and CLARIOS, LLC F/K/A JOHNSON CONTROLS BATTERY GROUP, LLC ("Clarios"), SIR RALEIGH ELECTRIC, Inc. ("SRE"), and NATHANIAL NORMAN ("Norman"), states as follows:

### PRELIMINARY STATEMENT

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiffs seek a determination of the parties' rights and obligations under insurance policies issued to SRE, with respect to additional insured coverage for claims arising in a lawsuit brought by Norman, styled *Norman v. Rudolph/Libbe, Inc. et al.,* presently pending in Forsyth County, North Carolina with the Case Number 22-cvs-704 (the "Underlying

131783039.1

1

Lawsuit"). A true and correct copy of the Amended Complaint in the Underlying Lawsuit (the "Underlying Complaint") is attached hereto as **Exhibit A**.

## PARTIES

2. Federated is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Owatonna, Minnesota.

3. P1 is a corporation organized under the laws of the State of Kansas, with its principal place of business located in Lenexa, Kansas.

4. P1 is authorized by the state of North Carolina to do business in North Carolina and is engaged in business in the county of Forsyth, North Carolina.

5. Rudolph is a corporation organized under the laws of the State of Ohio with its principal place of business located in Walbridge, Ohio.

6. Rudolph is authorized by the state of North Carolina to do business in North Carolina and is engaged in business in the county of Forsyth, North Carolina.

7. GEM is a corporation organized under the laws of the State of Ohio with its principal place of business located in Walbridge, Ohio.

8. GEM is authorized by the state of North Carolina to do business in North Carolina and is engaged in business in the county of Forsyth, North Carolina.

9. Clarios is a corporation organized under the laws of the State of Wisconsin with its principal place of business located in Kernersville, North Carolina.

10. Clarios is authorized by the state of North Carolina to do business in North Carolina and is engaged in the business of county of Forsyth, North Carolina.

11. SRE is a corporation organized under the laws of the State of North Carolina with its principal place of business located in Garner, North Carolina.

12. SRE is authorized by the state of North Carolina to do business in North Carolina and is engaged in the business of county of Forsyth, North Carolina.

13. Defendant, Norman, is an individual and a resident of Forsyth County, North Carolina.

14. Norman is a resident of Forsyth County, North Carolina.

## JURISDICTION AND VENUE

15. There is complete diversity of citizenship between Federated and all Defendants.

16. The amount in controversy exceeds $75,000.

17. Accordingly, this Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of North Carolina.

## GENERAL ALLEGATIONS

19. The Underlying Complaint alleges that GEM or Rudolph contracted with Clarios as the general contractor to perform construction and renovations of an automotive battery manufacturing facility owned by Clarios in Kernersville, NC (the "Facility") (the "Project") Ex. A ¶ 13.

20. The Underlying Complaint alleges that P1 contracted with GEM or Rudolph to perform mechanical, electrical and/or plumbing services as a subcontractor on the Project. Ex. A ¶ 14.

21. The Underlying Complaint alleges that SRE contracted with P1 to perform electrical work as a subcontractor on the Project. Ex. A ¶ 15.

22. The Underlying Complaint alleges that Norman was employed by SRE Ex. A ¶ 46.

23. The Underlying Complaint alleges that prior to August 8, 2019, Clarios caused Rudolph and/or GEM to open a doorway at the Facility between the chemset room (where SRE stored tools for its work at the Project) and the switchgear room (where SRE was working) and allowed SRE employees including Norman to use the doorway. Ex. A ¶¶ 29-34.

24. The Underlying Complaint alleges that on August 8, 2019, Clarios also allowed its employees to operate forklifts between the chemset room and the switchgear room and in close proximity to the doorway (the "aisleway"). Ex. A ¶¶ 37-38.

25. The Underlying Complaint alleges that there were no operating warning systems or signs to alert pedestrians to forklift traffic in the aisleway. Ex. A ¶¶ 39-45.

26. The Underlying Complaint alleges that on November 18, 2022, Andrew Lamphear, as employee of Clarios, was operating a forklift in the aisleway close to the doorway. Ex. A ¶ 52.

27. The Underlying Complaint alleges that at that same time, Norman stepped out of the chemset room into the aisleway and Lamphear ran over Norman's right foot with the forklift. Ex. A ¶¶ 53 and 56.

28. The eleven count (count five was used twice) Amended Complaint in the Underlying Lawsuit alleges six counts against Clarios for (1) *respondeat superior,* (2) premises liability, (3) negligent hiring, retention, training, and/or supervision of Lamphear, (4) failure to provide a safe work environment to Norman, (5) negligent hiring, retention and/or supervision of GEM/Rudolph, P1 and SRE, and (6) negligence per se; three counts against GEM/Rudolph for (1) failure to provide a safe work environment to Norman, (2) negligent hiring, retention and/or supervision of P1 and SRE, and (3) negligence per se; three counts against P1 for (1) failure to provide a safe worksite to Norman, (2) negligent hiring, retention and/or supervision of SRE, and

(3) negligence per se.

# THE SUBCONTRACT

29. The work of SRE on or about August 8, 2019 was subject to Contract No. P30728 (the "Subcontract") effective July 12, 2019 through October 15, 2019. The Subcontract lists P1 as the Contractor, SRE as the Subcontractor and Rudolph Libbe Group as the General Contractor, Owner, Engineer and Architect. A copy of the Subcontract is attached and marked as **Exhibit B**.

30. Article 9 of the Subcontract lists insurance requirements and states as follows in relevant part:

> 9.1 **Subcontractor's Insurance**. Prior to start of Subcontractor's Work and as a condition precedent to Contractor's duty to make any payments to Subcontractor, Subcontractor and its sub-subcontractors of any tier shall purchase and maintain in full force and effect during the performance of the Work policies of insurance from companies lawfully authorized to do business in the jurisdiction in which the Project is located and acceptable to Contractor as follows" Worker's Compensation Insurance, Employer's Liability Insurance, Comprehensive General Liability Insurance, including contractual liability insurance covering its obligations under the Subcontract, Automobile Liability and all insurance reasonably required by Contractor under the Subcontract Documents. …
>
> 9.2 **Minimum Limits of Liability**. The coverage shall be written for the types and limits ss shown on EXHIBIT I – INSURANCE REQUIREMENTS and shall be maintained, at Subcontractor's expense, for the life of this Subcontract, except as otherwise provided herein….

*Id.* at p. 10.

31. "Subcontract Documents" is defined in Section 2.2 as follows:

> 2.2 **Subcontract Documents**. The "**Subcontract Document**" include this Subcontract, Contractor's contract with General Contractor or Owner (the "Prime Contract"), together will all authorized changes, additions and modifications to the Prime Contract and including, without limitation, all addenda, modifications, revisions, plans, drawings, specifications, details, together with all general, technical, supplementary and special terms and conditions, any invitations for bids or information for bidders, if any, to the extent applicable, and all other documents listed in or referred to by the Prime Contracts, including those as set forth in EXHIBIT C – SUBCONTRACT DOCUMENTS attached to this Subcontract and, by reference, made a part of this Subcontract.

EXHIBIT C – SUBCONTRACT DOCUMENTS states:

The Subcontract Documents (1 page) include but are not limited to the following

CONTRACT DRAWINGS

SPECIFICATIONS

*Id.* at p. 15.

32. EXHIBIT I – INSURANCE REQUIREMENTS of the Subcontract states the following relevant to additional insured coverage:

> B. Commercial General Liability:
> 1. Bodily Injury & Property Damage Combined Single Limit $1,000,000 Each Occurrence
>
> \*\*\*
>
> 3. Primary Additional Insured: P1 Group, Inc., and Rudolph Libbe Group must be added as additional insureds under the Subcontractor's Commercial General Liability and Excess/Umbrella Liability policies. Coverage under such policies shall be primary and additional insured's insurance policies shall be excess over and non-contributory with Subcontractor's coverage.
>
> \*\*\*
>
> D. Excess/Umbrella Liability:
> 1. Bodily Injury & Property Damage Combined Single Limit: $1,000,000 Each Occurrence
>
> $1,000,000 Aggregate
>
> \*\*\*

*Id.* at p. 24.

33. The sample Certificate of Liability Insurance also includes the following language relevant to the issues of additional insured coverage:

> P1 Group, Inc. (Prime Contractor) and (Owner) are named as additional insureds on General Liability and Excess/Umbrella Liability policies for ongoing operations and completed operations…

"The Certificate Holder is an additional insured subject to the conditions of the Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement by Contract Endorsement for General Liability. Insurance provided by the General Liability Coverage is primary and noncontributory over other insurance.

*Id.* at p. 25.

## THE POLICIES OF INSURANCE

34. Federated issued Commercial Package Policy No.9910355 to SRE for the policy period July 1, 2019 to July 1, 2020 with limits of $1,000,000 per occurrence (the "Federated CGL Policy"). A copy of the Federated CGL Policy is attached and marked as **Exhibit C**.

35. The Federated CGL Policy stated the following in relevant part:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I -COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III - Liability Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the Supplementary Payments – Coverages A and B.

      **b.**    This insurance applies to "bodily injury" and "property damage" only if:

          **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

          **(2)**    The "bodily injury" or "property damage" occurs during the policy period;…

          **(3)**    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. if such listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

***

*Id.* at p. 120.

**SECTION V – DEFINITIONS**

***

      3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time.

***

*Id.* at p. 132.

      13.    "Occurrence" means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

***

*Id.* at p. 134.

      Endorsement form CG 20 33 04 13 of the Federated GL Policy (the "Blanket AI Endorsement") reads as follows:

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **Section II – Who is An insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;
 in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and

2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B. With respect to the insurance afforded to these additional insured, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "proerpty damage", or "personal or advertising injury" arising out of the rendering or, or the failure to render, any professional architectural, engineering or surveying services, including:

    a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys. field orders, change ordered or drawings and specifications; or
    b. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and adverting injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

2. "Bodily injury" or "property damage" occurring after:

   a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   b. That portion of "your work' out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C. With respect to the insurance afforded to these additional insured, the following is added to **Section III – Limits of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement you have entered into with the additional insured; or

2. Available under the applicable Limits of Insurance shown in the declarations; whichever is less.

   This endorsement shall not increase he applicable Limits of Insurance shown in the Declarations.

*Id.* at pp. 23-24.

36. Federated issued Commercial Umbrella Policy No. 9910356 to SRE for the policy period July 1, 2019 to July 1, 2020 with limits of $10,000,000 per occurrence (the "Federated Excess Policy"). A copy of the Federated Excess Policy is attached hereto and marked as **Exhibit D**.

37. The Federated Excess Policy included the following relevant provisions:

   A. EXCESS LIABILITY COVERAGES

   We will pay on behalf of the insured those sums the insured becomes legally obligated to pay as damages that are in excess of the applicable limits of "underlying insurance" because of "bodily injury", "property damage" or "personal and advertising injury":

   1. that occurs during the policy period shown on the Commercial Umbrella Liability Declarations; and

2. that is covered by "underlying insurance".

In the event of reduction or exhaustion of the aggregate limits of liability under "underlying insurance" by reason of losses paid thereunder, this policy will, subject to the terms and conditions of the "underlying insurance":

(a) in the event of reduction, continue in force as excess of the reduced "underlying insurance"; and

(b) in the event of exhaustion, continue in force as "underlying insurance".

If the limit of insurance available to the insured under the applicable "underlying insurance" is greater than the amount stated in the declarations, this policy will apply as excess of the greater amount.

*Id.* at p. 6.

Section IV. WHO IS AN INSURED provides, in pertinent part:

**A.** With respect to A. EXCESS LIABILITY COVERAGES, refer to the applicable "underlying insurance" to determine who is an insured. However:

\*\*\*

**2.** Additional insureds on the "underlying insurance" are not additional insured on the Commercial Umbrella Policy. However, if:

**a.** the named Insured is required by the terms of a written contract to name a person or organization as an additional insured; and

**b.** that written contract was executed prior to the commencement of the activity called for in the contract; then the person or organization specified in the written contract is an additional insured on the Commercial Umbrella Policy subject to the terms and conditions of the additional insured endorsement on the "underlying insurance".

*Id.* at p. 10.

# COUNT I

**(Declaratory Judgment – No Duty to Defend and No Duty to Indemnify Rudolph, GEM and Clarios for the Underlying Lawsuit as They Are Not Insureds Under the Federated Policies – Not Agreed in Writing)**

38. Plaintiff restates and realleges paragraphs 1 through 37 as though fully restated and realleged herein in their entirety.

39. The Blanket AI Endorsement in the Federated GL Policy includes as additional insureds any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Ex. C at p. 23.

40. The Federated Excess Policy also includes as additional insureds person or organizations where the Named Insured is required by the terms of a written contract to name a person or organization as an additional insured. Ex. D at p. 10.

41. SRE agreed in writing in the Subcontract only to name P1 Group, Inc. and Rudolph Libbe Group as additional insureds under the Federated Policies. Ex. B at p. 24.

42. The Prime Contract requirements for P1 to name Rudolph, GEM and/or Clarios as additional insureds under its policies, are not incorporated by reference into the Subcontract nor do such requirements of P1 constitute a written agreement by SRE to name those entities as insureds under the Federated Policies.

43. SRE did not agree in writing to name Rudolph as an additional insured under the Federated Policies.

44. SRE did not agree in writing to name GEM as an additional insured under the Federated Policies.

45. SRE did not agree in writing to name Clarios as an additional insured under the Federated Policies.

46. Consequently neither Rudolph, GEM and/or Clarios are Insureds under the Federated Policies and, therefore, Federated has no duty to defend or indemnify each of Rudolph, GEM and/or Clarios for the Underlying Lawsuit.

WHEREFORE, for the reasons set forth above, Plaintiff prays that this Honorable Court enter judgment in its favor and against all Defendants, (1) declaring that Federated has no duty under the Federated Policies to defend or indemnify each of Rudolph, GEM and/or Clarios for the Underlying Lawsuit, and (2) granting any such further relief as this Court deems equitable and just.

## COUNT II

**(Declaratory Judgment – No Duty to Defend and No Duty to Indemnify the Defendants for the Underlying Lawsuit as They Are Not Insureds Under the Federated Policies – Not Caused in Whole or in Part)**

47. Plaintiff restates and realleges paragraphs 1 through 37 as though fully restated and realleged herein in their entirety.

48. The Blanket AI Endorsement in the Federated GL Policy includes persons and organizations as additional insureds only with respect to liability for bodily injury caused in whole or in part by the acts or omissions of SRE or the acts or omissions of those acting on behalf of SRE. Ex. C at p. 23.

49. The Federated Excess Policy also includes as additional insureds the person or organization specified in the written contract is an additional insured on the Commercial Umbrella Policy subject to the terms and conditions of the additional insured endorsement on the underlying insurance. Ex. D at p. 10.

50. The alleged bodily injury to Norman was not caused in whole or in part by the acts or omissions of SRE or the acts or omissions of those acting on behalf of SRE.

51. Consequently neither P1, Rudolph, GEM nor Clarios are Insureds under the Federated Policies and, therefore, Federated has no duty to defend or indemnify each of P1, Rudolph, GEM and/or Clarios for the Underlying Lawsuit.

WHEREFORE, for the reasons set forth above, Plaintiff prays that this Honorable Court enter judgment in its favor and against all Defendants, (1) declaring that Federated has no duty under the Federated Policies to defend or indemnify each of P1, Rudolph, GEM and/or Clarios for the Underlying Lawsuit, and (2) granting any such further relief as this Court deems equitable and just.

## COUNT III
**(Declaratory Judgment – Limits of Available Coverage Under the Federated Excess Policy, if Any, $1,000,000.00)**

52. Plaintiff restates and realleges paragraphs 1 through 37 as though fully restated and realleged herein in their entirety.

53. Under the Blanket AI Endorsement in the Federated GL Policy, limits are restricted to those required by the contract or agreement you have entered into with the additional insured. Ex. C at p. 24.

54. Under the Federated Excess Policy, the person or organization specified in the written contract is an additional insured on the Commercial Umbrella Policy subject to the terms and conditions of the additional insured endorsement on the underlying insurance. Ex. D at p. 10.

55. The Limits of Excess/Umbrella insurance required in the Subcontract are $1,000,000.00. Ex. B at p. 24.

56. Consequently the available limits of coverage, if any, under the Federated Excess Policy to any or all of the Defendants are $1,000,000.00.

WHEREFORE, for the reasons set forth above, Plaintiff prays that this Honorable Court enter judgment in its favor and against all Defendants: (1) declaring that if Federated owes indemnification to any or all of P1, Rudolph, GEM or Clarios for the Underlying Lawsuit the

available limits of coverage are no more than $1,000,000; and (2) granting any such further relief as this Court deems equitable and just.

Dated, this 16th day of November, 2023.

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH, LLP

By: */s/ Christopher J. Derrenbacher*
Christopher J. Derrenbacher
NC State Bar No. 25402
*Counsel for Federated Mutual Ins. Co.*
3600 Glenwood Ave, Suite 350
Raleigh, NC 27612
T: (919) 821-4020
F: (919) 829-0055
Christopher.Derrenbacher@lewisbrisbois.com